FILED

MAR 1 4 2016

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                         DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES EASTER,<br><br>　　　　　　Petitioner,<br>v.<br><br>BRIAN DUFFY, Warden; and<br>KAMALIA HARRIS, Attorney General<br>of the State of California,<br><br>　　　　　　Respondents. | Case No.: 15cv65-DMS(KSC)<br><br>REPORT AND RECOMMENDATION RE PETITON FOR WRIT OF HABEAS CORPUS |

Petitioner Charles Easter, a state prisoner proceeding *pro se*, filed a First Amended Petition for Writ of Habeas Corpus ("Petition") challenging his jury conviction in San Diego County Superior Court Case No. SCD242058 for: (1) robbery with personal use of a deadly and dangerous weapon (an ice pick) and personal infliction of great bodily injury upon the victim; (2) battery with serious bodily injury and personal infliction of great bodily injury on the victim; and (3) assault by means of force likely to produce great bodily injury with personal infliction of great bodily injury on the victim. [Doc. No. 10-3, at pp. 211-212.]

This Court has reviewed the First Amended Petition and exhibits [Doc. No. 4]; respondents' Answer and supporting Memorandum of Point and Authorities [Doc. No.

9]; the Lodgments submitted by respondents, including the state court record [Doc. No. 10]; petitioner's Traverse [Doc. No. 11]; and petitioner's supplemental Memorandum of Points and Authorities [Doc. No. 17.] For the reasons outlined below, IT IS HEREBY RECOMMENDED that the District Court DENY the Petition in its entirety. In addition, IT IS RECOMMENDED that the District Court DENY petitioner's perfunctory request for an evidentiary hearing.

## ***PROCEDURAL HISTORY***

On July 19, 2012, petitioner was charged as follows in an Amended Felony Complaint: Count 1, robbery (§ 211) with personal use of a deadly and dangerous weapon (an ice pick) (§§ 12022(b)(1); 1192.7(c)(23)) and personal infliction of great bodily injury on the victim (§§12022.7(a); 1192.7(c)(8)); Count 2, battery resulting in serious bodily injury (§ 243(d)) and personal infliction of great bodily injury upon the victim (§ 1192.7(c)(8)); and Count 3, assault by means of force likely to produce great bodily injury (§ 245(a)(4)) and personal infliction of great bodily injury on the victim (§§ 12022.7(a), 1192.7(c)(8)). The Complaint also alleged that petitioner was previously convicted of a number of felony offenses between 1985 and 2009 that could serve to increase his sentence if convicted. [Doc. No. 10-5, at pp. 9-13.][1]

On October 11, 2012, a jury found petitioner guilty on all charges and specifically found true the allegations that petitioner personally used a deadly and dangerous weapon (an ice pick) on the victim and personally inflicted great bodily injury on the victim. [Doc. No. 10-5, at pp. 82-85.] The trial court sentenced petitioner to a total of ten years in state prison. [Doc. No. 10-9, at p. 2; Doc. No. 10-5, at pp. 110-111.]

On direct appeal, petitioner argued that his convictions should be reversed, because the trial court abused its discretion and violated his constitutional right to a fair trial by impartial jurors when it failed to sufficiently investigate allegations of juror misconduct. [Doc. No. 10-9, at p. 2.] The California Court of Appeal affirmed the judgment in an

---

[1] Statutory references in this paragraph are to the California Penal Code.

unpublished opinion filed on March 12, 2014. [Doc. No. 10-6, at pp. 3-4; Doc. No. 10-9, at p. 1-18.] The same argument was raised in a Petition for Review before the California Supreme Court. [Doc. No. 10-10, at pp. 1-16.] The California Supreme Court summarily denied the Petition for Review on May 21, 2014. [Doc. No. 10-11, at p. 1.]

On August 15, 2014, petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court. This Petition raises the same issues as those included in the instant federal Petition for Writ of Habeas Corpus. [Doc. No. 10-13, at pp. 1-28; Doc. No. 4, at pp. 1-25.] The California Supreme Court summarily denied this Petition on October 29, 2014. [Doc. No. 10-14, at p. 1.] The original Petition in this case was then filed on January 12, 2015. [Doc. No. 1.]

## ***FACTUAL BACKGROUND***

In reviewing a federal Petition for Writ of Habeas Corpus, this Court gives deference to the state court findings of fact and presumes them to be correct. Petitioner may rebut this presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992). The following facts are taken from the California Court of Appeal's unpublished decision denying petitioner's direct appeal in Case No. D063210.

A. *People's Case*

> On July 9, 2012, in broad daylight, [petitioner] and another Black male attacked and robbed [the victim], who was disabled and unemployed and had been running errands in downtown San Diego. [The victim] testified that as he was walking southbound down Park Boulevard near its intersection with E Street the attackers blocked his path and demanded money. [The victim], who suffered from severe anxiety, was terrified and tried to walk away. [Petitioner's] partner pulled out a long knife and stared at [the victim]. [The victim] was forced to the ground and, as [petitioner] held an ice pick inches away from [the victim's] face, the other attacker 'smashed' [the victim's] nose. Both attackers struck [the victim] in the face while demanding money. The attackers split open [the victim's] lip and broke bones in his nose and neck.

> [The victim] testified that [petitioner] took his wallet from his pocket during the attack. The wallet contained about $100. [Petitioner] emptied the wallet, took the cash, and threw the wallet on the ground. One of the men took [the victim's] passport and then threw it on the ground. [The victim] and the other attacker then ran away.
>
> [The victim] immediately called 911 to report the attack. When the police arrived, he described [petitioner] as a Black male who was wearing a black Michael Vick Atlanta Falcons football jersey. (1 RT 119, 122.) Shortly thereafter, the police located [petitioner] near the crime scene. [Petitioner] was wearing the Falcons jersey that [the victim] had described, and there was blood on [petitioner's] jeans that was later determined to contain DNA from [the victim].
>
> B.   *The Defense*
>
> [Petitioner] testified on his own behalf. He stated he had been convicted of domestic violence and was 'homeless, on the streets' in downtown San Diego on July 9, 2012. He was sitting on the sidewalk smoking crack cocaine when [the victim] walked up looking to buy PCP. [Petitioner] indicated that, when a homeless woman offered to sell the drug to [the victim], [the victim] sat down on the sidewalk between the woman and [petitioner]. According to [petitioner], another man then approached and kicked [the victim] in the face. When [the victim] tried to get up, the man hit him, and [petitioner] 'got out of there.'
>
> On cross-examination, [petitioner] admitted that when a police officer stopped him and asked whether he had been in the area of Park Boulevard and E Street, he lied to the officer when he denied he had been there. He told the prosecutor he did not know the man who attacked [the victim], and he could not tell the prosecutor how tall he was, how much he weighed, what kind of hairstyle he had, whether he had facial hair, or what he was wearing. [Petitioner] believed [the victim's] blood got onto his pants because he was sitting next to [the victim] when he was attacked.

[Doc. No. 10-9, at pp. 3-4 (Lodgment No. 6).]

///

///

///

## DISCUSSION

### I. Standard of Review.

Federal habeas corpus relief is available only to those who are in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "[A] mere error of state law is not a denial of due process." *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) (internal quotations omitted).

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citations and quotations omitted). Under AEDPA, a habeas petition "on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim– (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)&(2). For purposes of section 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Therefore, a lack of controlling Supreme Court precedent can preclude habeas corpus relief. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

The AEDPA standard is highly deferential and "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Federal habeas relief may be granted under the "contrary to" clause of section 2254 if the state court applied a rule different from the

governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The focus of inquiry under the "contrary to" clause is "whether the state court's application of clearly established federal law is objectively unreasonable." *Id.* "[A]n unreasonable application is different from an incorrect one." *Id.* In other words, federal habeas relief cannot be granted simply because a reviewing court concludes based on its own independent judgment that the state court decision is erroneous or incorrect. *Id.* Habeas relief is only available under Section 2254(d)(1) "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts" with Supreme Court precedents. *Harrington v. Richter*, 562 U.S. at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Where there is no reasoned decision from the state's highest court, Federal Courts "look through" to the "last reasoned state-court opinion" and presume it provides the basis for the higher court's denial of a claim or claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 805-806 (1991). If the state court does not provide a reason for its decision, the Federal Court must conduct an independent review of the record to determine whether the state court's decision is objectively unreasonable. *Crittenden v. Ayers*, 624 F.3d 943, 947 (9th Cir. 2010). To be objectively reasonable, a state court's decision need not specifically cite Supreme Court precedent. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court's decision will not be "contrary to clearly established Federal law." *Early v. Packer*, 537 U.S. 3, 8 (2002).

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." *Schriro v. Landrigan*, 550 U.S. 465, 473-474

(2007). In addition, Section 2254(e)(2) restricts the discretion of federal habeas courts to grant an evidentiary hearing. 28 U.S.C. § 2254(e)(2).

## II. *Petitioner's Claims.*

### A. *Ineffective Assistance of Trial Counsel.*

Petitioner argues that his trial counsel was constitutionally ineffective because he "acted more like a second prosecution than a conscientious diligent advocate." [Doc. No. 4, at p. 19.] According to petitioner, trial counsel did not adequately investigate the case; did not argue that identification evidence was impermissibly suggestive; and did not attack the prosecution's "misleadingly false" theory that petitioner had a motive for the crime because he did not have any money. [Doc. No. 4, at p. 21.] If trial counsel provided effective representation, petitioner believes that the jury would not have been persuaded to convict him. [Doc. No. 4, at p. 21.]

Trial counsel is generally presumed competent, so the burden rests on the accused to overcome this presumption and demonstrate a constitutional violation. *United States v. Cronic*, 466 U.S. 648, 658 (1984). To prevail on a claim of ineffective assistance of trial counsel, a habeas petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at p. 688. When considering all of the circumstances, counsel must be given "wide latitude . . . in making tactical decisions." *Id.* at 689. In other words, a reasonable tactical decision cannot serve as the basis for a finding that counsel was constitutionally ineffective. *Id.* In assessing an ineffective assistance of counsel claim, Federal Courts must also be "highly deferential," avoid "the distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

A habeas petitioner also cannot prevail on a claim of ineffective assistance of counsel without showing that counsel's performance prejudiced the defense. *Id.* at

687. To establish prejudice, a defendant must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. at 112. Because a defendant must prove both elements of the *Strickland* test in order to prevail, a court may reject a claim of ineffective assistance of counsel if it finds counsel's performance was reasonable, or the claimed error was not prejudicial. *Strickland v. Washington*, 466 U.S. at 687.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential.' [citations omitted], and when the two apply in tandem, review is 'doubly' so. [Citation omitted.] The *Strickland* standard is a general one, so the range of reasonable applications is substantial. [Citation omitted.] Federal courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. at 105. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.

Here, petitioner's ineffective assistance of counsel claim was presented only to the California Supreme Court in a state habeas petition, and the petition was summarily denied with citation to *People v. Duvall*, 9 Cal.4th 464, 474, 484 (2009); *In re Swain*, 34 Cal.2d 300, 304 (1949). A review of these decisions indicate that petitioner's state habeas petition was denied because his allegations were conclusory, and there was no explanation as to why he was unable to present sufficient factual allegations in his petition. As a result, he did not meet his burden of presenting a *prima facie* case,

which, if proven, would entitle him to relief. *Id.* Under the circumstances presented, it was not unreasonable for the California Supreme Court to deny petitioner's ineffective assistance of counsel claims.

### 1. *Failure to Investigate.*

Under *Strickland v. Washington*, 466 U.S. 668, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Harrington v. Richter*, 562 U.S. at 108. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Here, petitioner merely argues that his trial counsel failed to "adequately" or "properly" investigate the case and "a thorough investigation would have allowed the defense to be truly ready." [Doc. No. 4, at pp. 21.] For the first time in his Traverse, petitioner argues that counsel should have investigated a "known witness," but he does not identify the witness. [Doc. No. 11, at p. 7.] Without more, petitioner's claim lacks merit. Petitioner does not identify any favorable evidence that would have been uncovered by further investigation. Nor does he explain how any further investigation of the facts would have produced a different result at trial. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). In short, petitioner's allegation that his counsel failed to adequately or properly investigate the case is too vague and conclusory to meet his burden of showing deficient performance and prejudice. As a result, it was not unreasonable for the California Supreme Court to reject this argument.

### 2. *Failure to Argue Identification Evidence Was Impermissibly Suggestive.*

Petitioner argues that his right to Due Process was violated, because the victim was unable to identify him as the perpetrator in photographs prior to trial but then identified him at trial. Petitioner believes the victim identified him at trial based on "continual suggestiveness" and because he was always sitting next to a lawyer in court. [Doc. No. 4, at p. 18; Doc. No. 10-13, at p. 10.] In addition, petitioner believes his trial attorney was ineffective because he did not argue that identification evidence was "impermissibly suggestive." [Doc. No. 4, at p. 21.]

As noted above, the victim dialed 911 immediately after the attack. When the police arrived, he described his attacker as a Black male who was wearing a black Michael Vick Atlanta Falcons football jersey. He gave consistent descriptions of the attacker thereafter. [Doc. No. 10-1, at 124, 127, 236; Doc. No. 10-2, at p. 72.]

The identification evidence presented at trial included testimony by a police officer who compiled a lineup of six photographs, including a picture of petitioner, and showed them to the victim at the hospital on the same day of the attack. The victim was unable to identify petitioner. Next, the officer testified that he compiled a second lineup of six photographs, including a more accurate picture of petitioner, and a separate picture showing petitioner's clothing on the date of the attack with his face blanked out. The officer then went back to the hospital the next morning to give the victim another opportunity to identify petitioner. The victim was unable to identify petitioner in the lineup. When he asked the victim about the picture showing petitioner's clothing, the victim said "it's possible," but he could not say for sure if the clothing matched that worn by his attacker. [Doc. No. 10-2, at p. 66-73.] There was also evidence indicating the victim was given multiple medications for pain control while he was in the hospital due to the extent of his injuries and a surgery that was necessary the day after the attack to repair nasal bone fractures. The doctor who treated the victim testified that these medications could reduce a person's ability to recollect things. [Doc. No. 10-1, at pp. 191-192, 221-226; Doc. No. 10-2, at p. 82.]

At trial, the victim spontaneously pointed at petitioner and indicated he was the one carrying an ice pick during the attack. The victim also indicated petitioner was the one who took his wallet. [Doc. No. 10-1, at pp. 108-109.]

"[D]ue process concerns [may] arise . . . when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 132 S.Ct. 716, 724 (2012). For example, due process would be implicated if police designed a lineup where all participants were "grossly dissimilar in appearance to the suspect," if the suspect was the only one wearing distinctive clothing like that of the culprit, or if the suspect was pointed out before or during the lineup. *Id.* at 727. However, "an identification infected by improper police influence . . . is not automatically excluded. Instead, the trial judge must screen the evidence for reliability pretrial and must exclude evidence if the likelihood of "irreparable misidentification" is "very substantial." *Id.* at 720. "Due process requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.' [Citation omitted.]" *Id.* at 724.

The Supreme Court has specifically declined to extend the pretrial screening process of identification evidence for reliability "to cases in which the suggestive circumstances were not arranged by law enforcement officers." *Id.* at 720, 730. In *Perry v. New Hampshire*, for example, the challenged identification was made by an eyewitness who saw someone trying to break into cars parked outside an apartment building at night. When police arrived at the parking lot, one officer detained a suspect while the other officer went up the stairs to the fourth floor of the apartment building to talk to an eyewitness. The eyewitness stated she was looking out her kitchen window and saw a tall male open the trunk of a car and remove a large box. *Id.* at 721. When the officer asked for a more specific description, the witness pointed to her kitchen window and identified the suspect standing in the parking lot next to the police officer. *Id.* at 722. Later, the witness was unable to identify the suspect in a photographic

lineup. *Id.* At trial, the officer testified to the out-of court identification by the witness, and the suspect was found guilty of theft. *Id.*

On appeal, the defendant in *Perry v. New Hampshire* argued that "[s]uggestive circumstances alone" were enough to trigger the duty of a trial court "to evaluate the reliability of the resulting identification before allowing presentation of the evidence to the jury." *Id.* at 722-723. While acknowledging that "[m]ost eyewitness identifications involve some element of suggestion," the Supreme Court reasoned that "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess creditworthiness." *Id.* at 728. Instead, the Supreme Court indicated there were enough safeguards already in place to protect a criminal defendant against misidentification. These safeguards include the right to confront witnesses, the right to effective assistance of counsel who can expose flaws in eyewitness testimony during cross-examination, and jury instructions advising juries to take care in evaluating identification evidence. *Id.* at 728.

Based on clearly established Supreme Court law and the facts and circumstances presented, petitioner does not have a viable claim that his right to Due Process was violated when the victim identified him in court during trial. There are no facts to support a claim that identification evidence should have been excluded by the trial court because it was unduly suggestive as a result of improper police influence. Petitioner does not contend and there are no facts to indicate that police presented the victim with a photographic lineup or any other identification evidence that was overly suggestive and resulted in a significant risk of misidentification. For the same reasons, there is nothing to indicate petitioner's trial counsel should have requested exclusion of this evidence or a limiting instruction.

As noted above, "[s]uggestive circumstances alone," such as a defendant sitting next to his lawyer in court, are not enough to require a trial court to evaluate or exclude identification evidence. Rather, there are safeguards in place to aid the jury in

evaluating the reliability of any such evidence. Many of these safeguards were present in petitioner's trial. First, the jury was given detailed instructions on how to evaluate the credibility and believability of the witnesses. [Doc. No. 10-3, at pp. 184-185, 188, 190-191.] For example, the jurors were instructed that they could "consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony." [Doc. No. 10-3, at p. 184. The jurors were also instructed that a number of factors could be considered to decide whether testimony by a witness was believable. These factors included the ability of the witness to see, hear, or otherwise perceive the things the witness testified about and the ability of the witness to remember and describe what happened. [Doc. No. 10-3, at p. 184.]

Second, despite petitioner's argument to the contrary, trial counsel did not fail to argue that identification evidence was too suggestive to be believed. During his closing argument, trial counsel stated in part as follows: "After being attacked, the police officers . . . go to [the victim]. He's given three opportunities – two opportunities at the hospital to identify who was the attacker. [¶]He never at any point pointed out [petitioner] as being the person. . . . He never identified him. [¶]I know that when he was here in court, he pointed out to [petitioner] as being the person that attacked him. But he also told us that he's been coming to court several times and each time he comes to court, he sees me and he sees [petitioner] right next to me. . . . [Petitioner] is the only Black person next to me. So of course he's going to say, oh, yeah, [petitioner] was the person that attacked him. He's given many opportunities to do that. So he's seen my client. He's seen me with him. He's seen him in court. So he's – obviously, there's a certain bias and prejudice against that. So he sees him. He goes, okay, [defense counsel] is the defense attorney. He's defending petitioner. Petitioner must be the person that attacked me. [¶]He's given three opportunities. He's never identified [petitioner] before coming to court." [Doc. No. 10-3, at pp. 150-151.]

Third, defense counsel conducted a lengthy and thorough cross-examination of the victim. [Doc. No. 10-1, at pp. 176-199.] While cross-examining the victim, trial

counsel was able to show the weaknesses in his memory, his tendency to be easily confused, and his reliance on medications that could affect his memory and mental capacity. [Doc. No. 10-1, at pp. 177-181, 185-186, 188-189, 191, 193-194, 197-198.]

In sum, petitioner has not stated a viable Due Process claim based on the admission of impermissibly suggestive identification evidence. Nor has petitioner stated a viable claim that his trial attorney was ineffective, because he failed to adequately challenge identification evidence on grounds of suggestiveness. [Doc. No. 4, at p. 21.] As a result, it was not unreasonable for the California Supreme Court to reject petitioner's arguments in this regard.

### 3. *Failure to Oppose Motive Evidence*.

Petitioner contends that his trial attorney was ineffective, because he should have attacked the prosecution's theory that he had a motive to rob the victim because he "had no money." [Doc. No. 4, at p. 21.] According to petitioner the prosecution's theory was "misleadingly false." [Doc. No. 4, at p. 21.] In support of this argument, petitioner represents that he was not in fact indigent when he was taken to jail, because he had "funds in his possession" as demonstrated by Exhibit E, a copy of his inmate trust account activity for the period July 9, 2012 through October 23, 2012. [Doc. No. 4, at p. 15, 19; Doc. No. 1, at p. 33.] Exhibit E shows there was $10 in petitioner's inmate trust account on July 9, 2012, the date of the robbery in this case, which is the same date petitioner was taken into custody. [Doc. No. 1, at p. 33.] Petitioner also attached as Exhibit D to his Petition excerpts from testimony by the officer who located and arrested him after the robbery. These excerpts show that at the preliminary hearing and at trial, the arresting officer testified that he searched petitioner but did not find any money on his person. [Doc. No. 1, at pp. 30-31 (Ex. D to Pet'n); Doc. No. 10-12, at p. 60; Doc. No. 10-2, at p. 56.]

///
///
///

Petitioner believes this evidence shows the prosecution was "willing to fabricate a false theory in order to attain a conviction rather than to see justice prevail."[2] [Doc. No. 4, at p. 21.] Petitioner's contention is unconvincing. Without more, Exhibits D and E do not show that the arresting officer's testimony was false or misleading at the time it was made. The evidence does not eliminate the possibility that the $10 was on petitioner's person in a location that the officer did not search, or that the $10 was left in petitioner's inmate trust account from a prior incarceration. There was testimony at trial indicating petitioner had only gotten out of jail about four or five days prior to the robbery. [Doc. No. 10-3, at pp. 19-20.] Nor is $10 in an inmate trust account enough to show petitioner was not indigent at the time of his arrest, as a person with only $10 would still fit the definition of "indigent," which generally means "needy and poor." BLACK'S LAW DICTIONARY 913 (4 ed. 1968).

Petitioner's trial testimony also conflicts with his contention that he was not indigent at the time of the robbery. On direct examination, petitioner testified that he was homeless and living on the streets in downtown San Diego. Around noon on the day of the robbery, he was near the 7-Eleven store trying to get some change. Later that day, he facilitated a drug sale to get a piece of rock cocaine, but he did not have a pipe to smoke it. He therefore walked towards the area where the robbery took place, because he was acquainted with a homeless woman living there at the time so he could ask to use her cocaine pipe. [Doc. 10-2, at pp. 180-185, 194.]

---

[2] Similar to, but separate and apart from his claim that his trial counsel was ineffective for failing to object to "misleadingly false" motive evidence, petitioner contends that the prosecutor "maliciously prosecuted" him based on this "misleadingly false" motive evidence. [Doc. No. 4, at p. 16, 19, 21-22.] To violate the Constitution, a prosecutor's misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). For the reasons outlined in this section, there is nothing in the record to even suggest the prosecutor presented misleadingly false motive evidence or committed misconduct that resulted in a denial of petitioner's right to Due Process.

During cross-examination, the prosecutor sought to expand on this testimony to show petitioner had a motive to commit the robbery. In this regard, the prosecutor was able to establish that plaintiff was homeless, unemployed, used drugs on a regular basis during the day, was addicted to crack cocaine, and had very little means to support his addiction. [Doc. No. 10-3, at p. 13-14.] Petitioner admitted that drugs cost money and to support his habit he helped to sell cocaine to get a little for himself. He also collected cans and asked people for change. In addition, he admitted his income from these sources was unpredictable. [Doc. No. 10-3, at pp. 13-23.]

During closing argument, the prosecutor said: "There's a motive in this case. You don't need a motive. It's not a requirement, it's not an element of any of these crimes. People can attack people for absolutely no reason. And that's – that's a crime too. [¶]But in this case we know there's a motive. The defendant is unemployed, he's addicted to crack. He testified to that. He told you that. He needs money because drugs are not free. And he does what he can to get money so that he can support his habit, which is not a habit, it's an addiction. He needs this. [¶]Okay. He has cans sometimes, he told you. He relies on other people to give him money, change. He will sometimes, you know, assist in the sale of drugs to get broken off a piece or to get some money. [¶]This is someone who needs money and who does whatever he can do to get it. . . ." [Doc. No. 10-3, at p. 126-127.]

Under California law, "a defendant's poverty generally may not be admitted to prove a motive to commit a robbery or theft; reliance on such evidence is deemed unfair to the defendant, and its probative value is outweighed by the risk of prejudice." *People v. Koontz*, 27 Cal.4th 1041, 1076 (2002). However, a defendant's need for money combined with evidence of a drug habit that requires expenditures beyond the defendant's means may be relevant and admissible on the issue of motive. *People v. Castaneda*, 51 Cal.4th 1292, 1325 (2011). Therefore, the challenged motive evidence was arguably admissible under the circumstances, and it is likely that any objection to the admission of this evidence or to the prosecutor's closing argument would have been

overruled. "[T]rial counsel cannot have been ineffective for failing to raise a meritless objection." *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).

Even if petitioner could show that his counsel's failure to object to the challenged evidence or argument constituted deficient performance, petitioner would be unable to demonstrate prejudice in this case. Based on the strength of the prosecution's case against petitioner, it is apparent that the results of the proceeding would have been the same even if the challenged motive evidence was excluded. The victim immediately and consistently described his attacker as a Black male wearing a black Michael Vick Atlanta Falcons football jersey. Petitioner was found in the area shortly after the robbery wearing the jersey described by the victim. There was blood on petitioner's jeans that was later determined to contain the victim's DNA. Although petitioner testified to a different version of events and claimed he did not attack the victim, his testimony was incredulous, and the prosecutor was able to convincingly impeach his testimony and attack his credibility as a witness.

Contrary to petitioner's contentions, the record shows that trial counsel was a diligent advocate who provided adequate representation under the circumstances. When viewed as a whole, counsel's cross-examination of witnesses and his closing arguments demonstrated sound professional judgment, a thorough understanding of the evidence against petitioner, and a skillful grasp of the weaknesses in the State's case. Counsel's performance is not deficient "simply because in hindsight the defense has proven to be unsuccessful." *Cheney v. Washington*, 614 F.3d 987, 994 (9th Cir. 2010).

In sum, all of petitioner's allegations of ineffective assistance of trial counsel lack merit. As a result, it was reasonable for the California Supreme Court to reject petitioner's ineffective assistance of trial counsel claims, and there is nothing to indicate the state court proceedings resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Supreme Court law. There is also nothing to establish that the state court proceedings resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. It is

therefore RECOMMENDED that the District Court DENY petitioner's claims of ineffective assistance of trial counsel.

### B. *Ineffective Assistance of Appellate Counsel.*

Petitioner contends that his appellate counsel was ineffective because he refused to raise the issues presented in his Petition. All of the issues that petitioner wanted his appellate counsel to raise are discussed above.

Claims of ineffective assistance of trial and appellate counsel are assessed under the same standard set forth by the Supreme Court in *Strickland*, 466 U.S. at 687-688. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). However, the presumption of reasonableness is stronger for appellate counsel who has wider discretion than trial counsel in weeding out weaker issues. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Appellate counsel has "no constitutional duty to raise every non-frivolous issue requested by the defendant." *Id.* n.10. Failing to raise an argument on appeal that lacks merit does not constitute ineffective assistance of appellate counsel. *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001).

For the reasons outlined above, this Court has already concluded there is no merit to the issues petitioner wanted his appellate counsel to raise. Because the underlying claims lack merit, appellate counsel could not have been ineffective for deciding not to raise them. Therefore, the state courts' rejection of petitioner's claim of ineffective assistance of appellate counsel was not contrary to, or an unreasonable application of, clearly established Supreme Court law. As a result, it is RECOMMENDED that the District Court deny petitioner's claim of ineffective assistance of appellate counsel.

### III. *Request for an Evidentiary Hearing.*

A handwritten note on the caption of the Petition states "evidentiary hearing requested." [Doc. No. 4, at p. 1.] The Petition does not explain the reason for this request.

AEDPA "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999). "In

deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate. [¶]It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. at 474.

Here, the state court record resolves the issues and refutes the factual allegations in the Petition. No evidentiary hearing is necessary because petitioner has not presented colorable claims that, if proved, would entitle him to relief. Nor has petitioner shown there are factual disputes that would entitle him to relief if decided in his favor at an evidentiary hearing. Petitioner also has not referenced or submitted clear and convincing evidence to rebut the presumption of correctness of the facts determined in the state court proceedings. For these reasons, it is RECOMMENDED that the District Court DENY petitioner's unexplained and unsupported request for an evidentiary hearing.

## CONCLUSION AND RECOMMENDATION

This Report and Recommendation is submitted to the assigned United States District Judge pursuant to Title 28, United States Code, Section 636(b), and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

Based on the parties' moving and opposing papers and exhibits, IT IS HEREBY RECOMMENDED that the District Court issue an order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgment be entered DENYING the Petition.

IT IS HEREBY ORDERED that ***no later than April 18, 2016*** any party to this action may file and serve written objections to this Report and Recommendation. The document should be captioned "Objection to Report and Recommendation.

1   IT IS FURTHER ORDERED that any reply to the objection shall be filed and
2   served ***no later than May 2, 2016***.  The parties are advised that failure to file objections
3   with the specified time may waive the right to raise those objections on appear of this
4   Court order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

5   IT IS SO ORDERED.

6   Dated: March 14, 2016

Hon. Karen S. Crawford
United States Magistrate Judge